UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DONNELL CROSS,

   Petitioner,

v.

JEFF NINES, *Warden*, and
ATTORNEY GENERAL OF MARYLAND,

   Respondents.

Civil Action No. 22-1300-TDC

**MEMORANDUM OPINION**

Petitioner Donnell Cross, a state inmate incarcerated at the Maryland Correctional Institution in Jessup, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he collaterally attacks his state convictions for first-degree murder and related charges. Respondents filed a Limited Answer in which they argued that the Petition is time-barred and that even if it is not, the claim for relief should be dismissed as procedurally defaulted. Cross filed a Reply addressing these arguments. Upon review of the submitted materials, the Court finds no need for a hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DENIED.

**BACKGROUND**

On September 12, 2000, after a jury trial in the Circuit Court for Baltimore City, Maryland ("the Circuit Court"), Cross was found guilty of one count each of first-degree murder; first-degree assault; use of a handgun in the commission of a felony; wearing, carrying, and transporting a handgun; and possession of a firearm by a convicted felon. The charges arose from the murder of

Carlton Finch on April 29, 1999 outside a residence in Baltimore, Maryland. The trial evidence focused on the testimony of two eyewitnesses. Katina Wise testified that Cross had spent the night of April 28, 1999 at her home on South Monroe Street in Baltimore ("the Residence"), left on the afternoon of April 29, and returned with friends that evening at 8:00 p.m. or 9:00 p.m. for a party hosted by Wise. Cross left the Residence sometime later, but his friends stayed. Then Finch, William Vincent, and two others arrived at the Residence. Wise testified that Vincent got into an argument with one of Cross's friends, and she asked everyone to leave. The argument continued outside the Residence, and Wise asked one of her friends to call the police. Wise testified that while Finch, Vincent, and others were on the steps in front of the Residence, she then saw a white car and a dark colored car pull up, and three people got out of each car. Wise testified that she saw Cross get out of one of the cars, approach Finch, and "stand in his face." 9/11/2000 Trial Tr. at 17, ECF No. 11-5. After Wise saw someone retrieve a gun from the white car and pass it to Cross, she then witnessed Cross shoot Finch in the head. On cross examination, Wise acknowledged that when she was interviewed by the police on April 30, 1999 and on May 12, 1999, she had claimed that she did not see the shooting. She also acknowledged that she said nothing to the police about seeing a white car at the time of the shooting or about anyone retrieving a gun from a car. Wise testified that she did not tell the police the truth because she was scared.

The other primary witness, Lakayla McCloud, testified that she was at the Residence on April 29, 1999 when a group of men arrived. After an argument broke out, Wise "put everyone out," including Finch and Vincent, who were standing by the front steps. *Id.* at 50. McCloud testified that she was outside in front of Wise's home when a white car arrived and four people got out, including Cross. McCloud testified that as the argument resumed, Cross stood in front of the victim, Finch, and shot him in the head. On cross examination, McCloud acknowledged that she

had initially told the police that she did not know who shot Finch and that she had lied because she was scared. She also acknowledged that it was after the police told her that they knew she was lying and that she would go to jail if she did not tell the truth that she then told the police that she had witnessed the shooting. She was then presented with a photo array and identified Cross as the shooter.

On November 20, 2000, Cross was sentenced to life imprisonment, as well as a 20-year consecutive sentence on the charge of use of a handgun in the commission of a felony. On November 20, 2000, Cross filed a direct appeal to the Court of Special Appeals of Maryland, now the Appellate Court of Maryland ("Maryland Appellate Court"). Cross asserted a single assignment of error: that the trial judge erred "in allowing the prosecutor to present virtually his entire case by way of videotaped testimony (from the previous trial which ended in mistrial), where the state failed to show that it was unable to procure the witnesses' attendance by process or other reasonable means." State Record ("S.R.") 27, ECF No. 11-1. On April 11, 2002, the Maryland Appellate Court affirmed Cross's convictions and sentences. On May 9, 2002, the Court of Appeals of Maryland, now the Supreme Court of Maryland ("Maryland Supreme Court"), denied Cross's petition for a writ of certiorari, and the mandate issued on May 13, 2002. Cross did not file a petition for a writ of certiorari with the United States Supreme Court.

On May 1, 2008, Cross filed a state petition for post-conviction relief ("the Post-Conviction Petition") with the Circuit Court. In the Post-Conviction Petition, Cross asserted that his trial counsel was ineffective for failing to file a motion to sever the count of possession of a firearm by a convicted felon. On July 15, 2008, the Circuit Court held a hearing on the Post-Conviction Petition and denied it on August 1, 2008. On September 2, 2008, Cross filed an application for

leave to appeal, which the Maryland Appellate Court denied on September 21, 2011. The mandate issued on March 22, 2012.

On April 10, 2013, Cross filed a Motion to Reopen the Post-Conviction Petition on the grounds that his post-conviction counsel had been ineffective. The Circuit Court denied the motion on April 7, 2014, and that ruling was affirmed by the Maryland Appellate Court on May 8, 2015. A Motion for Reconsideration of that ruling was denied on June 24, 2015.

On June 6, 2016, Cross filed a Petition for a Writ of Actual Innocence ("the Innocence Petition") with the Circuit Court, in which he asserted that on February 17, 2016, he had received through a public records request new exculpatory evidence ("the New Evidence") that established his innocence, and that the State had engaged in misconduct by withholding this exculpatory evidence until that date. The evidence consisted of photographs of a white car and laboratory reports showing that latent fingerprints lifted from the car did not match Cross's fingerprints. The Circuit Court held a hearing on the Innocence Petition on July 12, 2017 and issued an order on January 21, 2020 denying the writ based on a finding that in light of the eyewitness testimony, and where the fingerprint evidence "certainly did not eliminate" the possibility that Cross had been in the white car, the New Evidence "would not have resulted in a different outcome." S.R. 191. The Maryland Appellate Court affirmed this denial of the writ on November 23, 2021. The Maryland Supreme Court denied Cross's petition for a writ of certiorari on March 28, 2022.

## DISCUSSION

On May 26, 2022, Cross filed in this Court the present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 in which he asserted that the State violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the New Evidence until 2016.

4

Respondents argue that the Petition is barred by the statute of limitations and, alternatively, that the claim is procedurally defaulted.

I.  **Legal Standard**

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S.

at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## II.  Timeliness

Respondents argue that the Petition, which was filed 20 years after Cross's conviction became final, is time-barred. Generally, a one-year limitations period applies to federal habeas petitions in non-capital cases filed by a person convicted in state court. 28 U.S.C. § 2244(d). Specifically:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1). This one-year period, however, is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

Cross's conviction became final on August 7, 2002, 90 days after his petition for a writ of certiorari to the Maryland Supreme Court was denied, which was the last date on which Cross could have sought a petition for a writ of certiorari to the United States Supreme Court. *See* Sup. Ct. R. 13.1; *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (stating that "if the federal prisoner chooses not to seek direct review in [the Supreme Court], then the conviction becomes final when 'the time for filing a certiorari petition expires'" (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003))). Approximately six years passed until Cross filed the Post-Conviction Petition in 2008, so the one-year limitations period, if measured from when the judgment became final, plainly expired. *See* 28 U.S.C. § 2244(d).

Cross, however, argues that the start date of the limitations period is governed by § 2244(d)(1)(D) because he did not discover the "factual predicate" of his federal habeas claim until February 17, 2016, when he received the allegedly exculpatory New Evidence pursuant to a public records request. Based on that date, the Petition would be timely, because Cross filed the Innocence Petition approximately 110 days later, on June 6, 2016, which tolled the limitations period until the issuance of the order by the Maryland Supreme Court denying Cross's petition for a writ of certiorari on March 28, 2022, and he filed the present Petition 59 days later, on May 26, 2022. *See* 28 U.S.C. § 2244(d)(2); *Kulbicki v. Graham*, No. GLR-16-1638, 2017 WL 262623, at *3 (D. Md. Jan. 20, 2017) ("Under Maryland law, a petition for writ of actual innocence is 'collateral' inasmuch as it is not a part of the direct appellate review of Petitioner's conviction.").

7

Respondents argue that Cross did not exercise "due diligence," as required to apply 28 U.S.C. § 2244(d)(1)(D), in seeking out the New Evidence during the 14 years from the time that his conviction became final until it was received. "Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances." *Gray v. Ballard*, 848 F.3d 318, 322 (4th Cir. 2017) (quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)). However, it "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option." *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir.2008) (quoting *Avon v. United States*, 291 F.3d 708, 712 (11th Cir.2002)). At the hearing on the Innocence Petition, Cross testified that he or his counsel had made multiple requests for the police file, in 2006, 2011, and 2015, and it was only in 2016 that the New Evidence was finally disclosed. With such a pattern of multiple requests, the Court does not readily find a lack of diligence as necessary to preclude Cross's reliance on § 2244(d)(1)(D), particularly where he ultimately discovered the New Evidence through a public records request. *See Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003) (in applying § 2244(d)(1)(D), considering when the petitioner could have discovered the relevant facts through public sources). The Court will therefore decline to dismiss the Petition as time-barred and will proceed to consider Cross's specific claim.

### III.    Due Process

Construed liberally, the Petition asserts that pursuant to *Brady*, Cross's due process rights were violated because the New Evidence constituted exculpatory evidence that was improperly withheld by the prosecution, and that had it been available at trial, Cross would have been found not guilty. Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused" violates due process where the evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Respondents primarily

argue that this claim is subject to procedural default because Cross did not exhaust state remedies by fairly presenting it in state court. A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in a non-capital case, a defendant must assert the claim in an appeal to the Maryland Appellate Court and then to the Maryland Supreme Court by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301 (LexisNexis 2020). To exhaust a claim through state post-conviction proceedings, a defendant must assert the claim in a petition for post-conviction relief filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7–101 to 7–103 (LexisNexis 2018). After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Maryland Appellate Court. Id. § 7–109. If the Maryland Appellate Court denies the application, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12–202.

When a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to note a timely appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note a timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (per curiam) (failure to raise a claim during post-conviction proceedings). As

relevant here, a procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman*, 501 U.S. at 735 n.1).

Here, however, Cross filed a self-represented Petition for a Writ of Actual Innocence in the Circuit Court in which he asserted that the New Evidence was newly discovered and alleged misconduct in that "the State withheld this exculpatory evidence until February 17, 2016." S.R. 132. In his brief in support of his appeal of the denial of the Innocence Petition, Cross, through counsel, asserted that "the Circuit Court abused its discretion in denying Appellant's petition for a writ of actual innocence based upon the State's *Brady* violation in finding that the newly discovered evidence did not create a substantial or significant possibility of a different result." S.R. 200. Respondents nevertheless argue that Cross did not fairly present a *Brady* claim, including by not asserting facts that would demonstrate that the New Evidence was improperly withheld by the prosecution, and that as a result of the lack of a detailed argument, the state courts did not directly address his claim as a *Brady* claim. Where Cross was self-represented when he filed the Innocence Petition, the *Brady* claim was referenced both in the Innocence Petition and on appeal, and the state courts effectively denied such a claim through its analysis on whether the alleged exculpatory evidence was material to the outcome, the Court will not resolve the present Petition based on procedural default and will, without specifically deciding that issue, consider the merits of the claim.

For a court to find a *Brady* violation, it must determine that the evidence was (1) "favorable to the accused"; (2) suppressed by the prosecution, either willfully or inadvertently; and (3) "material" in that prejudice resulted. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). To establish that

withheld exculpatory evidence is material, a defendant must demonstrate that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (quoting *Strickland v. Washington*, 466 U. S. 668, 694 (1984)). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* The materiality inquiry is therefore whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1999)).

Here, in denying the Innocence Petition, the Circuit Court applied a state law standard that provided that the New Evidence had to "create a substantial or significant possibility that the result may have different." S.R. 186. The Circuit Court found that the photographs of the white car and the fingerprint reports would not have had such an impact. First, the Circuit Court noted the strength of the evidence of Cross's guilt, which included that two eyewitnesses, Wise and McCloud, each testified that she saw Cross shoot the victim in the head, that Wise knew Cross well and had a personal relationship with him, that McCloud identified him from a photo array, and that their testimony was consistent with the forensic evidence relating to the shooting. Second, it noted that the photographs of the car had little if any evidentiary value, including because the police had found only that the vehicle could possibly have been the car that arrived at the Residence on April 29, 1999, and because Cross had presented no evidence that connected the car in the photographs to the crime. Third, the Circuit Court concluded that the fingerprint reports provided at best "*very* limited evidence" that Cross was not in the white car, because the fact that the latent prints, all but one of which were taken from the outside of the vehicle, "certainly did not eliminate" the possibility that Cross had been in the white car. S.R. 191. The Circuit Court therefore

concluded that "these reports and photographs would not have resulted in a different outcome." *Id.* The Maryland Appellate Court concurred with the Circuit Court's conclusion that "the photographs and the fingerprint reports did not speak to Mr. Cross's innocence nor did they undermine the critical testimony of the eyewitnesses" and affirmed the lower court's ruling. S.R. 232.

Upon consideration of this analysis and the present record, the Court finds that even if Cross could be deemed to have fairly presented a *Brady* argument in the state court proceedings, the state courts effectively denied it, and there was no "unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). While the *Brady* test for materiality differs slightly from that applied by the Circuit Court, this Court agrees with the Circuit Court's analysis that the photographs and fingerprint reports were of little probative value where there was no certainty that the car at issue was even the one that arrived at the scene of the crime, there were multiple other individuals who arrived in the same car used by Cross, and there was no evidence that the latent prints, all but one of which were taken from the exterior of the car and eight of which were taken from the trunk area, were even taken from areas accessed by Cross. The Court therefore agrees that this evidence did not undermine the eyewitness testimony of two individuals who either knew Cross well or identified him in a photo array. Accordingly, the Court finds that Cross has not demonstrated a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" as required to establish a *Brady* due process violation. *Bagley*, 473 U.S. at 682. The Petition will therefore be denied.

## IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition. Because the accompanying Order is a final order adverse to the applicant, Cross must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a petition is denied on procedural grounds, the petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the claims have been dismissed on substantive grounds, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). For a certificate of appealability to issue, a petitioner need not establish "that some jurists would grant the petition for habeas corpus." *Id.* at 338. Upon review of the record, the Court finds that Cross has not made either requisite showing. The Court therefore declines to issue a certificate of appealability. Cross may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: May 9, 2025

THEODORE D. CHUANG
United States District Judge